GUARANTY TRUST COMPANY OF NEW YORK, AS SUB-
STITUTED AND SURVIVING TRUSTEE OF THE TRUST
CREATED IN AND BY THE NINTH PARAGRAPH OF
THE LAST WILL AND TESTAMENT OF JOSEPH H.
OUTHWAITE, DECEASED, PLAINTIFF-RESPONDENT,
AND PHILIP J. STEVENS, *ET AL.*, DEFENDANTS-RE-
SPONDENTS, v. PHILIP J. STEVENS, JR., *ET AL.*, DE-
FENDANTS-APPELLANTS.

Argued October 7, 1958—Decided November 17, 1958.

244

*Mr. Charles Danzig* argued the cause for the defendants-appellants.

*Mr. John J. Gibbons* argued the cause for the defendants-respondents (*Messrs. Crummy, Gibbons & O'Neill,* attorneys).

*Mr. Charles W. Hutchinson* submitted a brief in behalf of the plaintiff-respondent (*Messrs. Emory, Langan, Lamb & Blake,* attorneys).

The opinion of the court was delivered by

HEHER, J. At issue here is the legal sufficiency of the donee's appointment by an unwitnessed holographic will valid and judicially proved as such in California, the state of the donee's domicile, under a power to appoint a trust *res* consisting of intangible personal property created by the will of the New Jersey domiciled donor, established as such in the state of his domicile.

The essential question is stated to be whether the "formal requisites" governing the execution of a testamentary power of appointment are determined by the law of the donor's or the donee's domicile. It is said that the law of the donor's domicile controls "both as to the execution of the power and the interpretation of it," citing *Farnum v. Pennsylvania Company for Ins., etc.,* 87 *N. J. Eq.* 108 (*Ch.* 1916), affirmed 87 *N. J. Eq.* 652 (*E. & A.* 1917).

The case is here by our certification, at the instance of the guardian for the infant defendant appellants, of an appeal to the Appellate Division from a summary judgment of the Chancery Division of the Superior Court sustaining the execution of the power. The appointed trust *res* aggregates $828,986.76; and the grounds advanced for immediate certification were "economy of judicial effort and expense to the Estate," and the need for the determination by this court of a "question of public policy and statutory construction."

The issue is raised on a stipulation of facts. The donor, Joseph H. Outhwaite, died November 15, 1902, resident and

domiciled in Lakewood, Ocean County, New Jersey. His last will and testament, dated October 24, 1902, was duly admitted to probate by the Surrogate of the County of Ocean on December 4, 1902. The testator was survived by his wife, Annette B. Outhwaite (who became Annette O. Jennings by a later marriage), and a son, Leonard Outhwaite, age 7, and daughter, Margaret Outhwaite, age 5, who married and then remarried and died in California, August 17, 1956, as Margaret Outhwaite de Wolfe.

Upon the death of Margaret leaving issue her surviving, the principal of the trust estate therein created for her benefit during life, one-third of the residue, was by the ninth paragraph of the will given, devised and bequeathed "* * * unto such persons and in such interests and proportions as [his] said daughter shall in and by her last will and testament in that behalf direct, limit and appoint, and in default of such direction, limitation and appointment, then absolutely unto her issue her surviving in equal shares."

On August 31, 1950 Margaret, then Margaret Outhwaite de Wolfe, resident and domiciled in California, there executed a "partial release of the power of appointment" given her by the will, to the end that "[t]hereafter such power of the undersigned to appoint such property shall be so limited as to constitute an excepted power described in Section 811(f)(2)(A) of the Internal Revenue Code, the existence of which on the undersigned's death will not result in the imposition of a Federal estate tax upon or on account of the property subject to such power to appoint."

At the time of her death, August 17, 1956, Margaret was still resident and domiciled in San Diego County, California. A holograph writing dated January 5, 1954, wholly in the handwriting of Margaret, whose testamentary act it purports to be, unattested by subscribing witnesses, was admitted to probate as Margaret's last will and testament in the Superior Court of California, in and for the County of San Diego, on September 28, 1956, and letters testamentary were issued to the deceased's husband, Walter C. de Wolfe, named in the writing as executor of what the writer described as "this

will, to serve without bond." An exemplified copy of the order admitting the will to probate and appointing the executor was received in evidence in this action.

The will has this provision:

"4. The trust fund established by my father Joseph H. Outhwaite and administered by the Guaranty Trust Company of New York— will now terminate and the principal to be divided equally between my sons Philip J. and Jerome Stevens after all expenses and taxes are paid."

Margaret left her surviving her sons, Philip J. Stevens and Jerome Stevens, the "appointees," and six grandchildren, Philip J. Stevens, Jr., Hope A. Stevens and Edward A. Stevens, all infants, children of Philip J. Stevens, and Jeffry Outhwaite Stevens, Susan Beven Stevens and Jerome Stevens, Jr., all infants, children of Jerome Stevens. All the infants are represented by the appellant guardian *ad litem*. On January 13, 1958, after the institution of this suit, a fourth child, Timothy Blair Stevens, was born to Philip J. Stevens. Margaret had another son, Edward Stevens, Jr., who died January 20, 1951, without issue him surviving.

Judge Wick ruled that the holographic will constituted a valid exercise of the power of appointment; and that, even on the contrary hypothesis, the bequest of the trust *res,* in default of appointment, to the "issue" of Margaret "her surviving, in equal shares," did not include grandchildren, and the entire fund would vest in Margaret's children, Philip J. Stevens and Jerome Stevens, in equal shares, to the exclusion of her grandchildren.

The guardian affirms that "the real question in the case is what did the testator mean when he said 'to such persons * * * as [his] said daughter shall in and by her last will and testament in that behalf direct, limit and appoint,'" and that by the crucial term "in and by her last will and testament" the donor meant "a will that conforms to the New Jersey Statute of Wills" rather than "a will that conforms to the Statute of Wills of any foreign state where the donee may be domiciled."

It is said in argument that "[n]ot only was 1902 [the year in which the will was executed and the testator died] far removed from the jet and atomic age but the ease of travel which we now take for granted was then unknown"; "[p]lane travel was still unborn and the phrase 'America on Wheels' was descriptive of a society that came almost a generation later"; "American civilization was not yet mobile or automotive"; and we cannot "in all fairness ascribe to a New Jersey resident in 1902 living in a society we now refer to as the 'horse and buggy days' the notion that when he used the term 'in and by her last will and testament' he meant a will other than one satisfying the New Jersey Statute of Wills," and "[n]o quest for abstract or fundamental justice can warrant such radical redefinition of well-known terms having then as well as now, when used by New Jersey residents, such a well-defined established meaning," and "[e]ven today, the term 'Last Will and Testament' or 'Will' when used by a New Jersey resident means a will conforming to our Statute of Wills and not a paper in the testator's own handwriting without attesting witnesses."

It is to be presumed, we are told, that "the testator used the words creating the power in view of the law of New Jersey, the State of his domicile," citing *Rosenbaum v. Garrell,* 57 *N. J. Eq.* 186 (*Ch.* 1898). And it is urged that under *Fidelity Union Trust Company v. Caldwell,* 137 *N. J. Eq.* 362 (*Ch.* 1945); *In re Winter's Estate,* 24 *N. J. Misc.* 172 (*Orph. Ct.* 1946), and *Farnum, supra,* "'will' has a specific meaning and it was not met"; " 'Will' is a term of art especially when used in a legal document operative only as a legal document," and "so when the donor said by 'will,' and said so in a legal instrument, 'will' must gain its meaning at the donor's domicile"; also that the will of the donor "is barren of any expression that the term 'will' meant anything else than what New Jersey usage ascribed to the term, namely, a will signed and published by the testator in the presence of two witnesses"; that where "the legal instruments in other cases have been expertly drafted the courts have noted this factor in giving an interpretation

in accordance with the art as manifested," citing *Carter v. Martin*, 124 *N. J. Eq.* 106 (*E. & A.* 1938); and that "[l]ittle effort is required to say 'by a will valid at the donee's domicile' or 'an instrument in the nature of a last will and testament,'" yet "there is not an inkling in the donor's will that he intended anything to that effect." And the critical phrase is then considered in context. Of this, more hereafter.

The case of *Blount v. Walker*, 28 *S. C.* 545, 6 *S. E.* 558 (*Sup. Ct.* 1888), is cited. There, the donor died domiciled in South Carolina. The will bequeathed a life interest in a trust created of property in South Carolina to the testator's daughter and the remainder was given to such persons as she should appoint "by her last will and testament duly executed." The daughter died a resident of North Carolina leaving a will which was valid under North Carolina law but was not witnessed by three persons as required by South Carolina law. The will was admitted to probate in North Carolina; and the question before the South Carolina court was whether or not the North Carolina will which did not conform to South Carolina law constituted an effective exercise of the power of appointment. In resolving the issue in the negative, the court declared that there must be strict compliance with the particular mode prescribed by the donor for the execution of a power of appointment, and the words to that end "must be taken in the sense which they usually bear in the place where [the] instrument in writing is executed," in their "usual and ordinary sense in the place where they are used," since a "person in a particular state or country, using words which, in that locality, bear a specific and well defined meaning, would naturally, and we may say necessarily, be regarded as using such words in that sense, unless there was something in the paper itself which would indicate that the words were used in a different sense * * *," and so, it is argued here, the phrase "by her last will and testament duly executed" was found by the South Carolina court to mean "a will executed according to the laws of South Carolina, for that is what those words

when used in South Carolina usually and ordinarily signify," and the addition of the words "according to the laws of South Carolina" in defining the mode of execution "would have been surplusage," and if the donor had in view a will valid by the law of the state or country of the donee's domicile, it was fair to assume that she would have said so in explicit terms.

On error to the United States Supreme Court, *Blount v. Walker*, 134 *U. S.* 607, 10 *S. Ct.* 606, 33 *L. Ed.* 1036 (1890), the full faith and credit clause of the Federal Constitution, *Art.* 4, § 1, was invoked, on the hypothesis that the North Carolina judgment admitting to probate the will purporting to execute the power of appointment established "the factum of the will" and should have full force and effect in the several states of the Union. The writ was dismissed in accordance with the holding by Fuller, C. J., that the South Carolina court had found that when the donor "prescribed the mode in which the power of appointment should be exercised, by the use of the words 'by her last will and testament duly executed,' she intended a will duly executed according to the laws of South Carolina, and not a will duly executed according to the laws of any State or country in which the donee of the power * * * might happen to be domiciled at the time of her death"; that the probate of the donee's will in North Carolina "established that the will was executed according to the law of the State where she was domiciled, but it did not establish that the will was executed according to the law of South Carolina, as it is conceded it was not," and when, therefore, the South Carolina court, in construing the donor's will, "arrived at the conclusion that the estate of the latter would only pass to such person as might receive an appointment by a will duly executed according to the laws of South Carolina, that was an end of the case, * * * *."

The judgment of the South Carolina Supreme Court in *Blount v. Walker* and the holdings of our own New Jersey courts in *Fidelity Union Trust Company v. Caldwell, supra,* and *In re Winter's Estate, supra,* are at variance with the

rule now commonly accepted that, barring a definite testamentary expression *contra,* the execution of a power of appointment by will may be had by a will conforming to the formalities of the law of the donee's domicile, as a fulfillment of the donor's intention.

And it would seem that *Blount v. Walker* was in principle overruled in South Carolina by *Adger v. Kirk,* 116 *S. C.* 298, 108 *S. E.* 97 (*Sup. Ct.* 1921), although it was there said that a "careful reading of [*Blount v. Walker*] discloses a set of circumstances very different from those" in the case then at hand, *Adger v. Kirk.* The court continued:

> "* * * [I]t may be said that the general rule is that, when a power of appointment is given, its execution is governed by the law of the domicile of the donee of the power. Especially is this true when the property affected is personal property. An apparent exception to this universal rule is presented by the case of *Blount v. Walker* [*supra*]. In this case our court held as a conclusion of fact that the donor of the power had inferentially directed that the exercise of the power of appointment should be according to the laws of South Carolina, and the court respected the donor's directions."

In *Adger,* the prescribed mode of execution was much the same as in the case now before us; the donee was empowered to appoint the subject property "by his last will," without more. It has no relevance in principle that there the donor was an Alabama domiciliary; the power was executed by will according to the law of Tennessee, the donee's domicile, but not the law of Alabama, the donor's domicile at her death.

If the instrument creating the power specifies that it is to be executed by deed or will, that, of course, means an instrument executed "with the usual formalities requisite for such instruments." *Simes and Smith, The Law of Future Interests* (2d ed.), § 972. Under the English cases, an appointment may be made by a will of the donee of the power if "in its formal execution the will of such donee be valid." *In re Sloan's Estate,* 7 *Cal. App.* 2d 319, 46 *P.* 2d 1007 (*D. Ct. App.* 1935), citing *Attorney General v. Barnes,* 2 *Vern.* 597, 23 *Eng. Rep.* 990 (1707); *Wagstaff v. Wagstaff,* 2 *P. Wms.* 258, 24 *Eng. Rep.* 721 (1724); *Dormer*

*v. Thurland,* 2 *P. Wms.* 506, 24 *Eng. Rep.* 837 (1728). See 64 *L. R. A.* 892. And, absent a statute to the contrary, "the donor could, if he wished, add to [the] requirements. Thus, he could provide that the power be executed by a will with four witnesses or by a deed acknowledged before a notary. * * * If a power is to be exercised by will, that means an exercise by last will; and any will executed in exercise of the power is revocable." *The Law of Future Interests, op. cit.,* § 972.

Doubtless, the donor's mind was directed to the execution of the power of appointment, not by a written expression operating *inter vivos,* but rather by an ambulatory instrument executed with the formalities required for a writing made *animo testandi,* authenticated as a will but not necessarily according to the demands of the New Jersey statute. The appointment is not so conditioned by the donor's will; there is no such implication in the mode and manner of its exercise. The trust *res* is given to such persons as the donee shall appoint "by her last will and testament"; this, without more. And the appointment was duly made by an instrument established as the donee's last will and testament according to the law of her domicile at the time of her death, by the judgment of a court of competent jurisdiction of the state of her domicile—a will sufficient in law to dispose of her personalty wherever situate, in New Jersey as elsewhere. *Nelson v. Potter,* 50 *N. J. L.* 324 (*Sup. Ct.* 1888); *Trenton Saving Fund Society v. Wythman,* 106 *N. J. Eq.* 93 (*E. & A.* 1930).

The difference is between the quality of the power to appoint movables and the mode of execution prescribed by the donor and the formalities serving to authenticate the donee's exercise of the power as so provided; and the testamentary expression is to be assessed accordingly. The probated instrument is testamentary in character; the *animus testandi* is manifest; the testatrix disposed of real and personal property to her husband absolutely and "family articles" to her sons, Philip J. Stevens and Jerome Stevens, and then, by paragraph 4, appointed the trust *res* to her

sons, and concluded by designating her husband as executor of the will and directing that he pay "out of the principal" of her estate "all so-called inheritance taxes that may be assessed against the estate or any beneficiary therein." The will in its entirety was written in the donee's own hand, and it bears her signature, by her own hand.

A "holographic" will is a valid and effectual testamentary act under the law of California. *West's Ann. Cal. Codes, Probate, ch. 2, sec.* 53. Such a will is there defined as "one that is entirely written, dated and signed by the hand of the testator himself"; it is "subject to no other form, and need not be witnessed." It is a concept of the civil law that a holograph writing need not be attested by subscribing witnesses, notarial seal and like formalities, to be authenticated, but is said to prove itself. The fact that the document is completely in the handwriting of the putative testator is deemed an adequate guaranty of its genuineness, a sufficient protection against forgery. *In re Towle's Estate,* 14 *Cal.* 2d 261, 93 *P.* 2d 555, 124 *A. L. R.* 624 (*Sup. Ct.* 1939); *In re Dreyfus' Estate,* 175 *Cal.* 417, 165 *P.* 941, *L. R. A.* 1917F, 391 (*Sup. Ct.* 1917); *McElhinny v. Trinkle,* 91 *Okla.* 259, 217 *P.* 179 (*Sup. Ct.* 1923). The common law did not require the attestation of a will; the practice came by statute. *Nelson v. Potter, supra; Lacey v. Dobbs,* 63 *N. J. Eq.* 325 (*E. & A.* 1901); *Trenton Saving Fund Society v. Wythman, supra.* And the holographic will, common to the usages of continental Europe, has statutory recognition in many of the jurisdictions of this country. See cases collected in 57 *Am. Jur., Wills,* §§ 632 *et seq.*

By common intendment, the donor had in view an exercise of the delegated appointive power by will, an ambulatory instrument to the exclusion of an *inter vivos* act, and this testamentary design was fulfilled by the donee's will authenticated in the mode and manner ordained by the law of her own domicile at the time of her death. That such was his intent and purpose is well nigh irresistible. To hold otherwise would be to indulge in the arbitrary and the illusive and to distort the sense and significance of the

words "last will and testament," and thus to subvert the donor's essential plan of an appointment by an instrument executed by the donee *animo testandi*. The testamentary purpose is that which finds expression in the will itself, read and evaluated in relation to the surrounding circumstances; intention is mental action culminating in a formulated design revealed by words; and we are bound to assume that the tokens of intention have been given their normal usage in expressing the meaning intended to be conveyed to the understanding of others. *In re Armour's Estate,* 11 *N. J.* 257 (1952). The proposed contrary course would reverse the interpretive process and imply a supposed unexpressed purpose for want of an express exclusion. The construction of a will is a function judicial and interpretive in nature and not legislative or creative; and terms of art are controlled by the context and the basic object in view. *Leyendecker v. Leyendecker,* 142 *N. J. Eq.* 449 (*E. & A.* 1948).

And the contextual references signifying to the guardian that "the qualifications of New Jersey law are to apply," *e. g.,* the prescribed formalities for the replacement of the trustee, are quite to the contrary. The absence of such specific requisites bespeaks a different and much less restricted view of the execution of the power. The primary and natural significance of "last will" may be modified only by certain and definite terms not fairly open to doubt as to the purpose. Life was less complex at the turn of the century, but not as provincial as the guardian would have it; and there is no reason to suppose that the donor contemplated that the donee would always have her domicile in New Jersey. Nor is the formality attending the donee's execution of the partial release of the power of appointment of any consequence on the inquiry as to the donor's testamentary intent.

We are concerned here, not with the question of "essential validity," but rather the "formal validity" of a purposive exercise of a valid power in a way sufficient under either law. See *Sewall v. Wilmer,* 132 *Mass.* 131 (*Sup. Jud. Ct.*

1882); *Amerige v. Attorney General,* 324 *Mass.* 648, 88 *N. E.* 2d 126 (*Sup. Jud. Ct.* 1949); *In re Barrett's Estate,* 137 *N. Y. S.* 2d 757 (*Surr. Ct.* 1955), reversed on other grounds, 143 *N. Y. S.* 2d 143 (*App. Div.* 1955); *In re Neill's Estate,* 89 *N. Y. S.* 2d 394 (*Surr. Ct.* 1949). *Farnum, supra,* following *Sewall v. Wilmer,* held that the residuary clause of the Pennsylvania-domiciled donee's will, valid as to formalities under either law, did not constitute an exercise of the power.

While there has been confusion in the English cases, it now seems to be settled law that capacity is determined by the law of the donee's domicile, and that compliance with the formalities of either domicile will suffice. *In re Lewal's Settlement Trusts,* 2 *Ch.* 391 (1918); *Murphy v. Deichler, L. R. A. C.* (*H. L.*) 446 (1909); *D'Huart v. Harkness,* 34 *Beav.* 324, 55 *Eng. Rep.* 660 (1865); *Milnes v. Foden,* 15 *P. D.* 105, 59 *L. J. P.* 62 (1890); *In re Price,* 1 *Ch.* 442 (1900); *In re Strong,* 95 *L. J. Ch.* 22 (1925); *Tatnall v. Hankey,* 2 *Moore, P. C.* 342, 12 *Eng. Rep.* 1036 (1838).

The rule of "either domicile" is grounded in reason and logic, as in aid of intention not otherwise confined. It is now embodied in the *Restatement of Conflict of Laws,* § 287. Except as stated in *section* 288, a power to appoint movables by will may be exercised "either (a) by an instrument legally valid as a will of the donee, or (b) by an instrument which would be valid as a will by the law of the donor's domicil at the time he executed the instrument which created the power."

The comment to (a) is that a will conforming to the law of the donee's domicile and, therefore, a valid testamentary act is a sufficient will to exercise the power; and to (b), that appointment by a will conforming to the law of the donor's domicile at the time he created the power, though not valid as a will because not conforming to the law of the donee's domicile, is a valid exercise of the power, as an instrument which the donor "may be taken to have regarded as a will." In a word, barring a definite indication *contra,* what would in all seeming be the donor's intention is effectuated as such. The polestar is the expressed intent of the donor.

And Professor Beale gave voice to the same principle in these words: "A will conforming to the law of the donee's domicil and therefore a valid testamentary act is a sufficient will to exercise the power"; and, on the other hand, "the power may be exercised by a will conforming to the law of the settlor's domicil, though it is not valid to pass the donee's movables because it does not conform to the law of the donee's domicil," a "double interpretation" of the word "will" explained by the common concept of a will as an "instrument bearing a certain form," and also as "a transaction having a certain legal effect." The English cases are analyzed as recognizing that "a common-law donor of a power would accept as a will either an instrument bearing the well-known form of a will or an instrument having the effect to be expected from a will," a reasonable hypothesis considering the nature of the act and the object in view. *Beale's Conflict of Laws,* § 287.1. See also *Mulford, "The Conflict of Laws and Powers of Appointment,"* 87 *U. Pa. L. Rev.* 403, 419 (1939); *Minor, Conflict of Laws* 353 (1901).

*N. J. S.* 3A:3–27 is not relevant. It is there ordained that the surrogate's court of any county may admit to probate "for any purpose" the will of a non-resident "admitted to probate" elsewhere, and "issue letters thereon," "provided the will is executed in accordance with the laws of this state." As the guardian conceded at the outset, the inquiry here concerns the intention of the testator-donor; and this statute is plainly not designed to interfere with the fulfillment of the donor's plan, as a matter of public policy. It relates to the jurisdiction of the surrogate's courts, without more.

 An unattested will of personalty was good and therefore entitled to probate in New Jersey, under the common law, until the passage of the act of 1851, *Session Laws, p.* 218 (now *N. J. S.* 3A:3–2) reducing the number of subscribing witnesses theretofore required in the case of a devise of real estate from three to two, and providing that wills disposing of personal property should be executed with the same formality ordained for wills devising realty. The

statute has been read as not annulling "earlier legislation that permitted the disposition of personal property upon the death of the owner by methods not provided in the Wills Act." *Trenton Saving Fund Society v. Wythman, supra.* And it is equally clear that the act has reference to testamentary dispositions by New Jersey domiciliaries and not to the wills made by non-residents. It was not until 1921 that jurisdiction to probate wills of foreign domiciliaries devising real property was conferred on the New Jersey courts. *L.* 1921, *c.* 283. *In re Chadwick's Case,* 80 *N. J. Eq.* 471 (*E. & A.* 1912); *In re Dodge's Will,* 89 *N. J. Eq.* 525 (*Prerog.* 1918). A foreign will affecting New Jersey real estate was then subject to the formalities of the *lex situs,* provable by an exemplified copy of the foreign probate. But the validity of bequests of personalty depends upon the law of the testator's domicile, and such a will executed according to the *lex domicilii* is operative upon personal property wherever situate. This is according to reason and logic, if not indeed constitutional principle. *Nelson v. Potter, supra.* See 5 *N. J. Practice* (*Clapp, Wills and Administration*), *pp.* 74, 214, and 1956 *Supp.* 94, *n.* 9. And, by the same token, such a will is equally effective as an appointment, barring an expressed intention *contra. N. J. S.* 3A:3–27 plainly does not declare a contrary policy.

And in this view we have no occasion to consider whether the grandchildren would share in the trust *res* in the event of a failure to appoint. See *In re Fisler's Estate,* 133 *N. J. Eq.* 421 (*E. & A.* 1943); *Hoyt v. Orcutt,* 1 *N. J.* 454 (1949); *Stickel v. Douglass,* 7 *N. J.* 274 (1951); also *L.* 1952, *c.* 221, *N. J. S.* 3A:3A–1, 2.

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For reversal*—None.