**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2651-17T4

IN THE MATTER OF THE
ADMINISTRATION OF THE
ESTATE OF RALPH SABEL,
    Deceased.

_____

Submitted May 6, 2019 – Decided May 28, 2019

Before Judges Messano and Gooden Brown.

On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. P-214806.

Berkowitz Lichtstein Kuritsky Giasullo & Gross, LLC, attorneys for appellant Congregation Adas Chareidis (Richard S. Finkelstein and Eric A. Carosia, on the briefs).

Charles Moriarty, attorney for respondent Sora Schonfeld (Timothy C. Moriarty, of counsel and on the brief).

Kurt E. Johnson, attorney for respondent Sylvia Sabel, Trustee of the Ralph H. Sabel Irrevocable Trust.

PER CURIAM

Ralph Sabel (Ralph)[1] died on March 31, 2016, in Lakewood. His daughter, Sora Schonfeld, applied for letters of administration, swearing that her father died intestate, and she was his only heir and next of kin. The Surrogate granted her request. In fact, Ralph allegedly executed two documents before his death that form the crux of this appeal.

In September 1999, while a resident of New York, Ralph established the Ralph H. Sabel Irrevocable Trust in California (the Trust), which was settled with property Ralph transferred to the Trust, and with himself as its sole beneficiary. His sister, Sylvia Sabel (Sylvia), was the only trustee. The Trust's sole purpose was Ralph's "support and maintenance" during his life. Article IV controlled disposition of the Trust's assets upon Ralph's death.

Section 4.1 provided Ralph with

> the power as of [his] death to appoint by express reference to this power in [his] last will, any part or all of the principal and accrued or undistributed income of the Trust to any one or more persons and entities, including . . . to continue the income of the [T]rust for any woman recognized as [his] spouse under Jewish law . . . .

Under Sections 4.2 and 4.3, if Ralph's death "terminate[d] the Trust," and "only if [Ralph] . . . failed to exercise his power of appointment[,]" then Sylvia was to

---

[1] To avoid confusion, we use first names. We apologize for this informality.

pay any debts, taxes and expenses of his last illness, and distribute the Trust property "to . . . [Ralph's surviving] issue . . . , to be theirs absolutely and free of [the] Trust." Article 9.14 contained a choice of law provision, providing that "California law shall govern the validity, construction, interpretation, and administration of all [t]rusts under this instrument."

Additionally, in February 2016, Ralph executed a purported last will and testament (the Will) in New York, his residence and domicile at the time. The Will appointed Israel Wagschal, who claimed to be Ralph's longtime friend, as executor, and included the following bequests:

> First: Real [p]roperty located [in] . . . New York . . . to the Congregation Adas Chareidis as a way to honor my religious commitment and community after I am gone with hopes that prayer will be abundant in the residence I have held dear. To the extent required, I hereby leave my interest in that certain Ralph H. Sabel Irrevocable Trust equal to the foregoing to honor my wishes.

> Second: I hereby give sixty percent (60%) of my estate to my beloved daughter, Sarah Mindel, thirty percent (30%) of my estate to the Congregation Adas Chareidis, and the remaining ten percent (10%) will go to my beloved companion, Zahaza Chacam. To the extent required, I hereby leave my interest in that

A-2651-17T4

certain Ralph H. Sabel Irrevocable Trust equal to the foregoing to honor my wishes. [2]

Wagschal filed a verified complaint and proposed order to show cause. He alleged that Schonfeld and Ralph were "estranged," and that she made "fraudulent misrepresentations" regarding Ralph's residence at the time of his death.[3] Wagschal asked the court to declare that Schonfeld "improperly brought the application for [a]dministration . . . as [Ralph] was a resident and domiciliary of . . . New York . . . ." Wagschal sought revocation of the letters of administration and a declaration that jurisdiction over Ralph's estate lay in New York.[4]

Schonfeld filed an answer, alleging her father had executed a valid, written revocation of the Will on March 15, 2016, and she attached a copy. She also denied that Ralph lived in New York at the time of his death, contending,

---

[2] Schonfeld is "Sarah Mindel." Zahava Sperber, the real name of the woman referred to in the Will as "Zahaza Chacam," acknowledged in a later-filed certification that she lived with Ralph, but never married him.

[3] Schonfeld also produced a religious will, which Ralph allegedly executed around the same time as the Will, and which Schonfeld claimed Wagschal concealed from the court.

[4] Wagschal's earlier attempt to probate the Will in New York failed because the letters of administration were already issued to Schonfeld.

instead, that he moved to New Jersey on or about March 15, 2016, to be close to her and her family.

In January 2017, the Congregation Adas Chareidis (the Congregation) filed a verified complaint. It alleged that Schonfeld had "unduly influenced [Ralph] to execute [the] revocation . . . in order to cause an intestate distribution of all of the [e]state's assets . . . and . . . the Trust's assets to pass to her . . . ." The Congregation also alleged that Ralph was a resident of, and domiciled in, New York at the time of his death. Further, the Congregation alleged that the Will was a valid exercise of Ralph's "testamentary power of appointment over the Trust[,]" and, pursuant to the Will, Ralph made a bequest of his real estate and thirty percent of his residuary estate to the Congregation. The Congregation asked the court to probate the Will, declare the revocation invalid, and impose a constructive trust on the Trust's assets.[5]

Sylvia filed an answer, in which she denied Ralph and Schonfeld were estranged, but otherwise professed a lack of knowledge regarding the Will or the revocation. She recognized that "[t]he validity of [the] Will . . . is the ultimate issue to be decided[,]" and agreed to be "bound by" the court's

---

[5] For purposes of this appeal, the parties now concede that Ralph was domiciled in New Jersey at the time of his death.

A-2651-17T4

determination. Sylvia asserted she would need to use Trust assets to pay necessary expenses, but there was no need to impose a constructive trust on the remaining assets of the Trust because her fiduciary responsibilities "to deal impartially" with competing beneficiaries were clearly defined by California law.

Schonfeld answered the Congregation's complaint and supplied a certification that denied any close relationship between Ralph and Wagschal. She asserted Wagschal "wage[d] a campaign of harassment, intimidation, deceit and violence in an attempt to swindle [her] father's estate." Schonfeld detailed her dealings with Wagschal prior to her father's death, as well as the circumstances under which Ralph had come to reside in Lakewood. She denied exerting any "undue influence" over her father. Schonfeld's counsel filed a certification that included discovery responses in the original litigation, and voluminous materials detailing Ralph's medical condition, the condition of his real property in New York, and a certification from Sperber, who denied that Ralph was a friend of Wagschal or that he worshiped with the Congregation.

The judge conducted a hearing with all counsel present. It is difficult to ascertain exactly who proposed that the court first consider whether, assuming

6

the Will was admitted to probate, it validly exercised the power of appointment in the Trust. Schonfeld's counsel asserted that was a purely legal issue.

However, counsel for the Congregation objected, noting first he had not even read the document filed by one of the other attorneys suggesting this path. Moreover, he noted if Schonfeld claimed the Will was not a valid exercise of the power of appointment, "there[ were] still issues of fact because what was [Ralph's] probable intention? You can apply the doctrine of probable intention to say that is was exercised." Finally, counsel noted that the Congregation claimed Schonfeld "made misrepresentations of fact" to secure the letters of administration. Convinced the issue was "a very narrow point, a legal point[,]" the judge ordered the parties to submit supplemental briefs as to whether the Will was a proper exercise of the power of appointment, and he set a date for oral argument.

The judge subsequently retired. When the parties next appeared in court, a different judge informed counsel that they should confer and possibly consent to a discovery schedule.[6] The judge entered an order, assigning the litigation to

---

[6] There is no transcript of this proceeding. Counsel for Schonfeld certified that the court's direction came after a discussion in chambers with counsel.

A-2651-17T4

a third judge, who would conduct oral argument and a case management conference at a future date.

The parties appeared before the third judge on December 14, 2017. Schonfeld asserted that California law controlled all issues under the Trust, and, under California law, Ralph's will was not a valid exercise of the power of appointment. The Congregation argued that California law did not apply because the Will, not the Trust, governed the exercise of the power, and Ralph validly exercised the power by disposing of his "interest" in the Trust in the Will. Alternatively, the Congregation and Wagschal argued that "under all the probable intent cases," the Will evidenced Ralph's "manifest and . . . specific intent to appoint the Trust assets with the power that he retained to himself to do that." Wagschal argued there was significant extrinsic evidence of Ralph's intention to have the assets of the Trust distributed in accordance with the terms of the Will.

At the conclusion of argument, the judge held that California law applied because of the Trust's choice of law provision, and that pursuant to that state's law and Section 4.1 of the Trust, the Will "must make expressed reference to the power of appointment in order to exercise the power." The judge considered N.J.S.A. 3B:3-33, which provides:

> The meaning and legal effect of a disposition in a will, trust or other governing instrument shall be determined by the local law of a particular state selected in the will, trust or other governing instrument, unless the application of that law is contrary to the provisions relating to the elective share described in N.J.S.[A.] 3B:8-1 et seq. or any other public policy of this State otherwise applicable to the disposition.

She concluded applying California law did not violate New Jersey law or public policy. The judge ultimately held that because the Will "does not specifically mention the power . . . even though it refers to the instrument giving the power[,]" i.e., the Trust, Ralph did not properly exercise the power of appointment through the Will.

The judge dismissed both complaints with prejudice. She entered the order under review confirming her oral decision, re-affirming the appointment of Schonfeld as administrator of Ralph's estate, and distributing all of the Trust assets to Schonfeld pursuant to California law. The Congregation filed this timely appeal.[7]

---

[7] Sylvia filed a brief on appeal, taking no position as to who are beneficiaries of the Trust under the Will, whether the revocation was valid, or the significance of "numerous other documents purporting to be [the] Last Will and Testament of Ralph . . . ." Wagschal filed a separate appeal, which we calendared back-to-back with this appeal, but he failed to file a brief. We administratively dismissed that appeal. As a result, we affirm the order under review to the extent it dismissed Wagschal's complaint. Sperber never participated in the trial court and has not participated in this appeal.

The Congregation contends that the judge erred in determining California law applied, and misapplied California law, both as to the exercise of the power of appointment and the Trust's default provisions. It also argues that the judge erred by failing to consider extrinsic evidence of Ralph's intention to exercise the power. Lastly, the Congregation argues that regardless of whether the power of appointment was properly exercised, the judge erred in dismissing its complaint with prejudice and in failing to consider an award of counsel fees.

We agree that under the peculiar circumstances presented, it was error to apply California law to decide the legal import of the provisions in the Will. We reach this conclusion because, over the Congregation's objection and with Schonfeld's urging, the first judge, in an bona fide, but we think ill-advised, attempt to dispose of the litigation at an early stage, asked the parties to assume arguendo the Will was admitted to probate in New Jersey. As such, the "legal issue" was not whether California law applied to the terms of the Trust; it clearly did.[8] Rather, the issue was the legal import of two bequests of the Will.

_____

[8] We need not reach the merits of the Congregation's alternative argument that the judge misapplied California law. We only note that as urged by Schonfeld, the judge relied on Estate of Eddy, 134 Cal. App. 3d 292 (1982), for the proposition that because the Trust expressly provided that the Will specifically refer to the power of appointment, and it did not, the Will was an invalid exercise of the power under CAL. PROB. CODE §§ 630-32. A subsequent decision, Estate

Therefore, N.J.S.A. 3B:3-33 had no relevance to the decision because the Will contained no choice of law provision.

If New Jersey law applies to the Will, as the Congregation urges, "the rule now commonly accepted that, barring a definite testamentary expression contra, the execution of a power of appointment by will may be had by a will conforming to the formalities of the law of the donee's domicile, as a fulfillment of the donor's intention." Guar. Tr. Co. of N.Y. v. Stevens, 28 N.J. 243, 250-251(1958); see also Restatement (Third) of Prop.: Wills and Other Donative Transfers § 19.1 note on cmt. e (Am. Law Inst. 2011) ("The position that the law of the donee's domicile controls the effectiveness of an attempted appointment is supported by Restatement (Second) of Conflict of Laws § 275 cmt. c [(Am. Law Inst. 1971)].").

Earlier the same year that it decided Stevens, the Court further explained:

> The general rule in our jurisdiction is that a residuary clause, general in its nature, will not ordinarily suffice to exercise a power of appointment.
>
> The testator must in some way express or indicate a conscious intention to execute it. In many instances

---

of O'Connor, 26 Cal. App. 5th 871, 885-86 (2018), decided after the hearing in this case, distinguished the facts in Eddy and held, without the need to consider extrinsic evidence, that the testator's language "clearly infer[red]" his "conscious and deliberate exercise of the power of appointment . . . ." The parties debate whether O'Connor controls, but we do not reach the merits of that argument.

the intention exists and, although imperfectly expressed, is aided and supported by surrounding circumstances and their reasonable and logical implications, while in other cases the intention is not expressed at all. Our responsibility, within the recognized rules of construction, is to distinguish between the classifications, keeping in mind the basic principle hereinafter alluded to.

The rule has been expressed many times in varying language. In its simplest form, it appears in the early case of Munson v. Berdan, 35 N.J. Eq. 376, 378 (Ch. 1882), where the court said:

> but it is not necessary that under such a power of appointment the intention to execute the power should appear by express terms or recital in the instrument — it is sufficient if the act shows that the donee had in view the subject of the power.

Some years thereafter, in Wooster v. Cooper, 59 N.J. Eq. 204, 223 (Ch. 1900), the above expression was adopted in toto, but it was added that:

> [t]his intention may be collected from attending circumstances, as that the will includes something the testator had not, otherwise than under the power, or that a part of the will would be wholly inoperative unless applied to the power.

[Bank of N.Y. v. Black, 26 N.J. 276, 282-83 (1958) (emphasis added) (internal citations omitted).]

Even though the parties now agree that Ralph was domiciled in New Jersey at the time of his death, we reach no conclusion as to whether New Jersey law necessarily applies to construe the Will. See, e.g., In re Estate of Pleasonton, 45 N.J. Super. 154, 160-61 (App. Div. 1957) (holding that under New Jersey law, the rules for construing the terms of a will "are taken from the law of the testator's domicile as that law existed at the time the will was made") (emphasis added) (citing Ryder v. Myers, 113 N.J. Eq. 360, 365-66 (Ch. Ct. 1933)); but see In re Estate of Garver, 135 N.J. Super. 578, 580-581 (App. Div. 1975) ("In ordinary circumstances the rule is that the law of testator's domicile at time of death governs in determining a will's validity as to the disposition of personal property.") (emphasis added) (citing Stevens, 28 N.J. at 253); see also N.J.S.A. 3B:3-9 (providing a "will is validly executed" if the execution complies "with the law of the place where at the time of execution or at the time of death the testator was domiciled . . . .").

We refuse to speculate about the consequences of a purely hypothetical situation, i.e., for whatever reason, Ralph's purported revocation is ineffective and the Will is otherwise properly subject to probate. The parties hotly contest both issues, which rightfully should have been decided before any others.

We reverse the order under review to the extent it dismissed the Congregation's complaint with prejudice, and remand the matter to the trial court for proceedings that are consistent with this opinion.[9]

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

[9] As Schonfeld properly points out, the Congregation never sought attorneys' fees in the trial court.  However, as we understand the issue, the Congregation asserts it is entitled to fees if it prevails on appeal.  The request is premature and inadequate under our rules.  See R. 2:11-4.